UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO JAIME CERVANTES, JR., Petitioner, v. THOMAS VALDEZ, Warden, Respondent. | Case No.: 26-cv-1534-GPC-AHG **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND ISSUING CERTIFICATE OF APPEALABILITY** |

Gerardo Jaime Cervantes, Jr. ("Petitioner") is a state prisoner proceeding through counsel with a Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254. (ECF No. 1.) Petitioner challenges his conviction in San Diego County Superior Court case number SCN427902 on one count of forcible rape with a true finding that the victim was a minor age 14 or older, nine counts of unlawful sexual intercourse by a person age 21 or older with a minor under the age of 16, and three counts of oral copulation by a person 21 or older on a person under age 16, for which Petitioner was sentenced to a term of 19 years in prison. (ECF Nos. 7-1 at 95-100, 7-2 at 1-7, 7-3 at 47-48 (verdict); ECF No. 7-3 at 9-11, 50-52 (sentence).)

Petitioner alleges one claim for habeas relief, asserting there was insufficient evidence to support his forcible rape conviction, in violation of his Fourteenth Amendment right to have all essential elements of the crime proven beyond a reasonable doubt. (ECF

No. 1 at 14-17.) Respondent has filed an Answer and lodged the state record. (ECF Nos. 6, 7.) Respondent maintains habeas relief is unavailable because the state court decision was neither contrary to, nor was an unreasonable application of, clearly established federal law. (ECF No. 6 at 5-7, 10-13.) Petitioner has filed a Traverse.[1] (ECF No. 10.)

## I. FACTUAL BACKGROUND

The following is taken from the state appellate court opinion affirming the judgment in *People v. Cervantes*, D082691 (Cal. Ct. App. Oct. 23, 2024). (*See* ECF No. 7-13.) The state court factual findings are presumptively correct and entitled to deference in these proceedings. *See Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

> In 2015 and 2016, Cervantes engaged in repeated sexual conduct with Jane Doe [fn: We refer to the victim as Jane Doe to protect her privacy.] when she was 15 years old. The sexual acts included oral copulation and frequent instances of sexual intercourse. In a recorded telephone call, Cervantes later admitted to engaging in sexual contact with Jane Doe when she was 15 years old.
>
> Because Cervantes's appeal is limited to challenging the conviction in count 1 for forcible rape (§ 261, subd. (a)(2)), we limit our discussion to the evidence relevant to that count. The conduct at issue in count 1 occurred in a bedroom with the door closed. According to Jane Doe, she was on her back, with Cervantes on top of her, pinning down her arms and putting his whole body weight on her. Jane Doe testified, "I was being forced. I was being held down and I was being forced to have sex with him."
>
> "Partly through" the incident, someone started knocking on the door. Jane Doe stated that when the knocking started, "I tried to get away. I tried to tell him to stop . . . . He didn't listen. He kept going. If anything, he was thrusting even harder. And I was trying to wiggle in . . . . any way possible to try and break free. And he wouldn't listen to me . . . . And, finally, I managed to get my leg free and up high enough where I was able to put my knee on his

[1] Although this case was referred to United States Magistrate Judge Allison H. Goddard pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for disposition of this matter. *See* S.D. Cal. CivLR 71.1(d).

> chest, and I was able to kick him in the groin, which caused him to pull away immediately and I ran to the bathroom." Jane Doe explained that it took one or two minutes for her to break free after the person started knocking.
>
> The prosecutor asked, "You mentioned that as you started to tell him to stop, he actually started thrusting more forcefully. Will you describe that for us?" Jane Doe answered, "It was like as if he was trying to finish before he could let me get away." The prosecutor asked, "Do you know if he was able to finish?" Jane Doe answered, "I don't know if he was able to finish."

(ECF No. 7-13 at 2-3.)

## II. PROCEDURAL HISTORY

On June 29, 2023, a San Diego County Superior Court jury found Petitioner guilty on one count of forcible rape pursuant to Cal. Penal Code § 261(a)(2) with a true finding that the victim was a minor age 14 or older within the meaning of Cal. Penal Code § 264(c)(2), nine counts of unlawful sexual intercourse by a person age 21 or older with a minor under the age of 16 pursuant to Cal. Penal Code § 261.5(d), and three counts of oral copulation by a person 21 or older on a person under age 16 pursuant to Cal. Penal Code § 288a(b)(2). (ECF Nos. 7-1 at 95-100, 7-2 at 1-7, 7-3 at 47-48.) On August 18, 2023, Petitioner was sentenced to 19 years in prison. (ECF No. 7-3 at 9-11, 50-52.)

Petitioner appealed, alleging there was insufficient evidence to support his forcible rape conviction, the same claim for relief presented in the instant Petition. (ECF No. 7-10.) On October 23, 2024, the California Court of Appeal affirmed the judgment of conviction in a reasoned decision. (ECF No. 7-13.) Petitioner subsequently filed a petition for review in the California Supreme Court (ECF No. 7-14), which on January 15, 2025, that court denied, stating in full: "The petition for review is denied." (ECF No. 7-15.)

On March 11, 2026, Petitioner filed his federal Petition, raising one claim alleging insufficient evidence to support his forcible rape conviction. (ECF No. 1.) On June 17, 2026, Respondent filed an Answer and lodged the state court record. (ECF Nos. 6-7.) On August 13, 2026, Petitioner filed a Traverse. (ECF No. 10.)

///

## III. STANDARD OF REVIEW

A federal habeas petitioner cannot obtain habeas relief on a claim that the state court adjudicated on the merits unless the petitioner is first able to show that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011), quoting 28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *Bruce v. Terhune*, 376 F.3d 950, 953 (9th Cir. 2004). With respect to section 2254(d), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007), citing *Williams*, 529 U.S. at 410. "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006), quoting 28 U.S.C. § 2254(e)(1). In a federal habeas action, "[t]he petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "If this standard is difficult to meet, that is because it was meant to be. As amended

by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter*, 562 U.S. at 102.

Moreover, even where section 2254(d) is satisfied or does not apply, a reviewing habeas court must still determine whether the petitioner has established a federal constitutional violation. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) (§ 2254(d) "sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it."); *see also Frantz v. Hazey*, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

**IV. DISCUSSION**

Again, Petitioner alleges one claim for federal habeas relief, in which he asserts insufficient evidence supports his forcible rape conviction in violation of his Fourteenth Amendment right to have all essential elements of the crime proven beyond a reasonable doubt. (ECF No. 1 at 14-17.) Specifically, Petitioner contends there is insufficient evidence of penetration as required to sustain the forcible rape conviction. (*See id.*) Respondent, meanwhile, maintains federal habeas relief is unavailable because the state court rejection of this claim was neither contrary to, nor was an unreasonable application of, clearly established federal law. (ECF No. 6 at 5-7, 10-13.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In reviewing a claim of insufficient evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "[T]he applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324 (footnote omitted); *see also Cavazos v. Smith,* 565 U.S. 1, 2 (2011) (per curiam)

("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.") "The *Jackson* standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004), quoting *Jackson*, 443 U.S. at 324 n.16. Moreover, "[a]fter AEDPA, we apply the standards of *Jackson* with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005), citing 28 U.S.C. § 2254(d); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.")

Petitioner raised his sole federal habeas claim in a petition for review in the California Supreme Court, which that court denied without a statement of reasoning. (*See* ECF Nos. 7-14, 7-15.) Petitioner previously raised this claim on direct appeal in the California Court of Appeal (ECF No. 7-10), which affirmed his judgment in a reasoned decision. (*See* ECF No. 7-13.) Given the recognized presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground," *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 584 U.S. 122, 128 (2018) ("We conclude that federal habeas law employs a 'look through' presumption."), and the absence of record evidence or argument seeking to rebut this presumption, the Court will "look through" the state supreme court's summary denial to the state appellate court's reasoned decision. (*See* ECF No. 7-13 at 3-6); *see Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect- which simply 'looks through' them to the last reasoned decision- most nearly reflects the role they are ordinarily intended to play.") (footnote omitted).

The California Court of Appeal rejected this claim, reasoning as follows:

> Cervantes's single argument on appeal is that insufficient evidence supports his conviction for forcible rape (§ 261, subd. (a)(2)) in count 1 based on the incident we have described above. According to Cervantes, the People

did not prove that any sexual penetration occurred as required for a rape conviction.

In evaluating Cervantes's challenge to the sufficiency of the evidence, "we must '"review the entire record in the light most favorable to the judgment,"' and then determine whether it contains '"evidence that is reasonable, credible, and of solid value"' such that a reasonable jury could have found the defendant guilty beyond a reasonable doubt. . . . '(S)ufficiency determinations necessarily take account of the "standard of proof that applied before the trial court."' . . . '(T)hat is why in criminal cases we must ensure the record demonstrates substantial evidence to establish guilt beyond a reasonable doubt.' (¶) . . . We must '"presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence . . . '. . . for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'"' . . . But we cannot, however, venture beyond the evidence presented at trial, and may consider only those inferences that are reasonably supported by the record. '"(A) reasonable inference . . . 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.'"' . . . It 'must logically flow from other facts established in the action,' and it cannot be 'based entirely on the suspicions of the officers involved in the case and the conjecture of the prosecution.'" (*People v. Ware* (2022) 14 Cal.5th 151, 167–168, citations omitted).)

"Rape is an act of sexual intercourse." (§ 261, subd. (a).) Sexual intercourse requires penetration of the genitalia. (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79 ("Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis."); *People v. Karsai* (1982) 131 Cal.App.3d 224, 232 ("Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina.").) "Any sexual penetration, however slight, is sufficient to complete the crime." (§ 263.)

Cervantes acknowledges that Jane Doe testified he was "thrusting" while they were having "sex," but he bases his challenge to the sufficiency of the evidence on the fact that Jane Doe was never specifically asked "whether when (Cervantes) was thrusting, his penis actually made contact with (her) genitalia." Cervantes argues that "(t)hrusting motions" "can be made without

any actual sexual contact." He also posits that the person knocking on the door may have interrupted the act, so that penetration was never able to occur. According to Cervantes, "(a)t best, the government proved an *attempted* sexual assault."

Although case law has cautioned that, in "sex-crime cases requiring penetration," prosecutors should avoid "vague, euphemistic language" and should "ask followup questions where necessary" (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1038 (*Paz*)), Jane Doe's testimony was specific and descriptive enough to support a finding that penetration occurred. It is true, as Cervantes observes, that "thrusting" does not necessarily require contact with genitalia. Here, however, Jane Doe provided more information than simply that Cervantes was "thrusting." Jane Doe testified that she was "being forced *to have sex*" with Cervantes, and that Cervantes was "trying to finish." Jane Doe also described the duration of the incident as lasting for at least a minute longer *after* the person started knocking on the door.

The term "have sex" is commonly used as a synonym for sexual intercourse. Further, Jane Doe's reference to Cervantes "trying to finish" is most reasonably understood as referring to an attempt to achieve orgasm. In that context, a reasonable juror could easily conclude from Jane Doe's testimony that she was describing an incident during which Cervantes was repeatedly thrusting his penis into her genitals in an act of sexual intercourse to try to achieve orgasm, and that the penetration occurred over the course of more than a minute. (Cf. *Paz*, *supra*, 10 Cal.App.5th at p. 1040 (the victim's statement that the defendant "started having anal sex'" with her and that he moved "'his body in and out'" of hers supported a finding of penetration).)

Moreover, the evidence does not support Cervantes's contention that the person knocking on the door might have interrupted the act *before* Cervantes was able to achieve penetration. Jane Doe explained that Cervantes was "thrusting even harder," as if trying to reach orgasm, *after* the knock on the door, and that it was at least a minute until she was able to break free.

In sum, Jane Doe's statements that she was "forced to have sex" with Cervantes and that he was "thrusting" while he was "trying to finish" provide ample support for a finding that Cervantes sexually penetrated Jane Doe during the incident giving rise to count 1.

(ECF No. 7-13 at 3-6.)

///

Petitioner contends "there was no evidence in the record that petitioner penetrated Jane during the alleged forcible rape" and that "[t]he appellate court inferred penetration from Jane's testimony that petitioner made 'thrusting motions' and her belief that petitioner was 'trying to finish,'" but asserts this evidence "was too vague, and thus insufficient to support a reasonable inference that petitioner had actually penetrated Jane's vagina with his penis." (ECF No. 1 at 16.) Specifically, he argues it was "speculative and conjectural" to infer penetration from the victim's testimony about "thrusting motions" and the testimony that Jane thought he was "trying to finish," which failed to sufficiently show "what kind of sexual act petitioner was engaging in." (*Id.*) Petitioner points to the fact that Jane testified she and Petitioner had on other occasions engaged in sexual activity other than intercourse, not involving penetration, and had engaged in other acts of consensual sexual intercourse. (*See id.* at 17, citing RT 392.) In the Traverse, Petitioner additionally maintains that "Jane's description of Petitioner 'trying to have sex with me' did not explicitly describe contact between genitalia to establish penetration." (ECF No. 10 at 7.)

Here, the pertinent California state statute provides in relevant part that: "Rape is an act of sexual intercourse accomplished under any of the following circumstances: . . . If it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." Cal. Penal Code § 261(a)(2). The jury instructions given in this case as to the forcible rape charge provided as follows:

> The defendant is charged in Count One with rape by force. To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant had sexual intercourse with a woman;
>
> 2. The woman did not consent to the intercourse; AND
>
> 3. The defendant accomplished the intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else.

///

> *Sexual intercourse* means any penetration, no matter how slight, of the vagina or genitalia by the penis. Ejaculation is not required.

(ECF No. 7-1 at 79.)

Petitioner's contention that the evidence presented at trial was insufficient to support the jury's finding that penetration occurred is refuted by the Court's review of the record, which supports both the guilty verdict and the reasonableness of the state court's decision upholding Petitioner's conviction for forcible rape. Under California law, "[t]he penetration which is required is sexual penetration and not vaginal penetration. Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina." *People v. Karsai*, 131 Cal. App. 3d 224, 232 (1982) (discussing Cal. Penal Code § 263). California law elsewhere defines sexual penetration as follows: "'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." Cal. Penal Code § 289(k)(1); *see also People v. Quintana*, 89 Cal. App. 4th 1362, 1366 (2001) (rejecting attempt to differentiate between sexual penetration elements of Cal. Penal Code §§ 289 and 263, noting "statutes relating to the same subjects are to be harmonized if possible" and holding "that the degree of penetration to commit these crimes is the same.") (citations omitted).

The California Court of Appeal recognized and applied this definition in its analysis and explicitly noted that under California law "'[a]ny sexual penetration, however slight, is sufficient to complete the crime.'" (ECF No. 7-13 at 4, citing Cal. Penal Code § 263.) The Court must abide by this definition of penetration and specifically, to the state appellate court's holding that even "slight" penetration of the genitalia is sufficient to complete the crime of rape under California law. *See* Cal. Penal Code § 263 ("The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. Any sexual

penetration, however slight, is sufficient to complete the crime."); *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

At trial, Jane Doe was asked "[o]ver the course of time from 2015 to 2016 when he was having sex with you, were there ever any times where family almost or tried to walk in on you?" to which she replied: "I can only remember one," and proceeded to state: "I can't remember what I was doing that day and I cannot remember what was said or done leading up to these moments, but I -- I was being forced. I was being held down and I was being forced to have sex with him while my sister was trying to reach me through the bathroom." (ECF No. 7-6 at 396.) Jane Doe further testified that during the encounter: "I was on my back on his futon in his bedroom, on the ground," and that: "He was on top of me and he had both my arms pinned down. He had his whole[-]body weight on me." (*Id.* at 397.) In response to the prosecutor's inquiry about how her arms were pinned, Jane testified: "They were pinned on either side of my head" and further stated that Petitioner was "[u]sing his hands and his forearms to hold me down." (*Id.*) When asked what she did once her sister knocked on the door, Jane stated: "I tried to get away. I tried to tell him to stop because my sister was out there, calling my name. I said, 'You need to stop. She's right there. You need to stop.' He didn't listen. He kept going. If anything, he was thrusting even harder. And I was trying to wiggle in any -- any way possible to try and break free. And he wouldn't listen to me while my sister was yelling." (*Id.*) When asked to describe Petitioner's thrusting after she told him to stop, Jane stated: "It was like as if he was trying to finish before he could let me get away." (*Id.* at 398.)

Upon review, a rational trier of fact plainly could have agreed with the jury's verdict based on the evidence presented at trial. *See Cavazos*, 565 U.S. at 2 ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.") That is, under the definition of penetration

pursuant to state law and given Jane's testimony in evidence, a rational trier of fact "could have found the essential elements of the crime" of forcible rape and could have found penetration was proven "beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

While Petitioner argues that "Jane's description of Petitioner 'trying to have sex with me' did not explicitly describe contact between genitalia to establish penetration" and correctly observes that Jane offered "no explicit testimony describing the contact of the vagina or genitalia by the penis" (ECF No. 10 at 7-8), Petitioner fails to adequately address the appellate court's reliance on Jane's unequivocal testimony that "she was 'being forced *to have sex*'" with Petitioner (ECF No. 7-6 at 396), rather than him *trying* to have sex with her, as well as the state appellate court's related finding that "[t]he term 'have sex' is commonly used as a synonym for sexual intercourse." (ECF No. 7-13 at 5.) Indeed, Jane Doe expressly testified that on the occasion in question, she "was being forced to have sex with him" with Petitioner "on top" and her "arms pinned down" and "his whole[-]body weight on me." (ECF No. 7-6 at 396-97.) Even to the extent the Court were inclined to construe Jane's testimony that she was being forced to "have sex" with Petitioner as less than direct evidence of sexual intercourse, "circumstantial evidence alone can be sufficient to demonstrate a defendant's guilt." *United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004) (citations omitted); *see also Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (holding that "'[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction,'" and acknowledging "[n]evertheless, 'mere suspicion or speculation cannot be the basis for creation of logical inferences.'"), quoting *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986) (additional citations omitted).

Moreover, Jane's testimony went well beyond circumstantial or speculative, given her explicit testimony that on the occasion in question, she was "being forced to have sex" with Petitioner. When viewing Jane's testimony about this incident in conjunction with her testimony about other sexual encounters with Petitioner, it is apparent that Jane clearly delineated between other sex acts or sexual activity and the encounters involving vaginal sex. For instance, Jane specified that during the first incident, Petitioner initially "bent me

over the bathroom counter" and after undressing, "took out his penis and put it between my legs," and described the subsequent events as follows: "He didn't put it inside of my vagina. He put it in between my legs and had me crisscross my legs so it would squeeze him, and he put his penis there and he was thrusting. And I would say that lasted maybe five minutes or so. I'm not too sure. And then he put it inside my vagina and then continued thrusting." (ECF No. 7-6 at 385-86.) On a different occasion, Jane testified about an encounter where Petitioner wanted her to "give him oral, oral sex," during which she "got on my knees and I gave him oral sex and his penis was in my mouth." (*Id.* at 388-89.) Jane was then asked about the frequency of the incidents of "vaginal sex," which she said took place "about two or three times a week or two weeks" over the span of several months (*id.* at 390), while testifying about one incident of oral sex he attempted on her through her clothing and two incidents where Petitioner had Jane perform oral sex on him. (*See id.* at 390-92.) Jane testified that after the move to a new apartment, the vaginal sex was less frequent, but Jane stated it did continue and took place "multiple times" over a subsequent two-month period. (*See id.* at 393-94.) Notably, it was just after this recounting of the "multiple" instances of "having sex" that continued to take place with Petitioner that Jane was asked, and testified about, the instance at issue here. (*See id.* at 394, 396.) While Petitioner appears to posit that there was a lack of clarity about the type of sexual activity Jane recounted, the trial record plainly reflects Jane testified that during the encounter in question: "I was being held down and I was being forced to have sex with him while my sister was trying to reach me through the bathroom," that Petitioner "wouldn't listen" and was "thrusting even harder" when her sister knocked on the door and Jane asked him to stop, and that "[i]t was like as if he was trying to finish before he could let me get away." (*Id.* at 396-98.)

Petitioner also faults the evidence at trial for lack of specificity, observing that Jane's testimony "makes no mention of a body part" and that there was a lack of expert or medical testimony as to the impact on Jane's person or body parts, and relies on several state court cases where the reviewing court cited such testimony as supporting a conclusion there was

sufficient evidence of penetration. (ECF No. 10 at 7-8) (citations omitted.) Although state court decisional law is plainly not persuasive authority in evaluating Petitioner's claim for federal habeas relief under AEPDA, "[t]he *Jackson* standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Chein*, 373 F.3d at 983, quoting *Jackson*, 443 U.S. at 324 n.16. Even so, the state appellate court cogently addressed this argument, recognizing and reasoning that "[a]lthough case law has cautioned that, in 'sex-crime cases requiring penetration,' prosecutors should avoid 'vague, euphemistic language' and should 'ask followup questions where necessary' (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1038 (*Paz*)), Jane Doe's testimony was specific and descriptive enough to support a finding that penetration occurred." (ECF No. 7-13 at 5.) Given the deferential standard of review on federal habeas, Petitioner fails to demonstrate the state court's conclusion was incorrect, much less that it was objectively unreasonable. *Juan H.*, 408 F.3d at 1274 ("After AEDPA, we apply the standards of Jackson with an additional layer of deference."), citing 28 U.S.C. § 2254(d).

Considering this evidence "in the light most favorable to the prosecution," as required under *Jackson*, 443 U.S. at 319, it is apparent the jury could have found the prosecution proved beyond a reasonable doubt the requisite "slight" evidence of penetration necessary to find Petitioner guilty of forcible rape. *See* Cal. Penal Code § 263 ("The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. Any sexual penetration, however slight, is sufficient to complete the crime."); *see Jackson*, 443 U.S. at 319 (it is the province of the factfinder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" and "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.")

To the extent a not guilty finding based on a failure to prove penetration may have also been a tenable conclusion for the jury to reach based on the evidence presented at trial,

it is *not* the role of this Court to reconsider and reweigh the evidence and federal habeas relief is not available even if this Court could plausibly have arrived at a different verdict or outcome after considering the evidence in the first instance. *See e.g. Cavazos*, 565 U.S. at 2 ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."), citing *Jackson*, 443 U.S. 307. Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Indeed, "*Jackson* requires a reviewing court to review the evidence "in the light most favorable to the prosecution.'. . . Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010), quoting *Jackson*, 443 U.S. at 319, 326.

The state appellate court plainly adhered to its role, found that "a reasonable juror could easily conclude from Jane Doe's testimony that she was describing an incident during which Cervantes was repeatedly thrusting his penis into her genitals in an act of sexual intercourse to try to achieve orgasm, and that the penetration occurred over the course of more than a minute," and concluded that "Jane Doe's statements that she was 'forced to have sex' with Cervantes and that he was 'thrusting' while he was 'trying to finish' provide ample support for a finding that Cervantes sexually penetrated Jane Doe during the incident giving rise to count 1." (ECF No. 7-13 at 5-6.) Not only does this Court agree with the reasoning and conclusion of the state appellate court but further, given the "additional layer of deference" required under AEDPA, finds Petitioner also fails to demonstrate the state court's decision ran afoul of *Jackson*. *See Juan H.*, 408 F.3d at 1274, citing 28 U.S.C. § 2254(d); *see also Coleman*, 566 U.S. at 651 ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.")

In view of the state court's detailed discussion of the evidence concerning penetration and the reasoned rejection of Petitioner's assertion that insufficient evidence supported the jury's findings, as well as the deferential standard of review under AEDPA, Petitioner fails to demonstrate that the state court's decision was contrary to, or an unreasonable application of, *Jackson*, nor does he show that the state court's decision was based on an unreasonable determination of the facts. *See Chein*, 373 F.3d at 983, quoting *Jackson*, 443 U.S. at 324 n.16; *Juan H.*, 408 F.3d at 1274; *Cavazos*, 565 U.S. at 2.

## V. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing Section 2254 Cases (2019). "A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'" *Shoemaker v. Taylor*, 730 F.3d 778, 790 (9th Cir. 2013), quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "The standard for granting a certificate of appealability is low." *Frost v. Gilbert*, 835 F.3d 883, 888 (9th Cir. 2016), citing *Shoemaker*, 730 F.3d at 790.

Under this standard, the Court grants a certificate of appealability on the sole claim in the Petition, as the Court finds that "'reasonable jurists could debate whether' . . . the issue presented is 'adequate to deserve encouragement to proceed further.'" *Shoemaker*, 730 F.3d at 790, quoting *Slack*, 529 U.S. at 484.

## VI. CONCLUSION AND ORDER

For the reasons discussed above, the Court **DENIES** the Petition for a Writ of Habeas Corpus and **ISSUES** a certificate of appealability on the sole claim in the Petition.

**IT IS SO ORDERED.**

Dated: October 5, 2026

Hon. Gonzalo P. Curiel
United States District Judge